IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| UNITED STATES OF AMERICA, *Plaintiff*, | |
|---|---|
| vs. | CRIMINAL NO. 17-068 (FAB) |
| ANGEL CARMONA-ALOMAR *Defendant.* | |

## MOTION TO SUPPRESS EVIDENCE

Angel Carmona-Alomar, the defendant, moves the Court to suppress all physical evidence and statements resulting from the illegal traffic stop, search, seizure, and arrest by Guaynabo City Police Department ("GCPD") officers on February 3, 2017.

### I. Introduction

On February 8, 2017, Mr. Carmona-Alomar, was indicted with the following count: drug user in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 922(o). (Docket No. 8). The physical evidence against Mr. Carmona-Alomar – a Glock 17 pistol, two high capacity magazines, ammunition, two plastic bags which field tested positive for marijuana, one cigarette containing a substance that which field tested positive for marijuana, and three "Percocet" pills – is the product of an illegal traffic stop, warrantless search and seizure and illegal arrest in violation of the Fourth Amendment to the U.S. Constitution and should be suppressed. The confessions made by Mr. Carmona-Alomar to HSI agents are in violation of the Fifth Amendment and should also be suppressed.

### II. Factual Background

#### A. Government's Version of Facts[1]

---

[1] These facts are taken from the Affidavit to the Criminal Complaint ("the Affidavit") and the Department of Homeland Security ("ICE") reports provided to counsel in discovery.

On February 3, 2017 at 12:15am, Guaynabo City Police Department ("GCPD") officers were patrolling Highway 834 in Guaynabo when they pulled over a Grey colored 2002 Toyota Rav4 for a violation of a Guaynabo City Municipal Traffic Ordinance which prohibits switching lanes under certain circumstances. The driver of the Rav4 was Emilio Quinonez Diaz, the front seat passenger was Felix Hernandez-Alomar, and the rear passenger was Angel Carmona-Alomar, the defendant.

Upon conducting the stop, GCPD Officer Gamaliel Rivera-Cruz approaches the vehicle and orders all occupants two lower their windows. The officer claims that at this point he could smell, "the odor of marijuana" and because of this asked the driver if they had been using illegal substances. The driver remained silent and thus ordered all occupants to exit the vehicle.

The officers then allege that they ask the driver, Emilio Quinonez Diaz, for consent to search his vehicle. The driver allegedly consents and executes a Consent to Search form at 12am.

Despite allegedly having legal consent to search the vehicle the officers claim they do not search the car themselves. Instead they call for a K-9 unit to the scene. K-9 "Viking" and his handler, Roberto Santos Torres, arrive on scene some time later.

In a video recording provided by the Government, yesterday, April 3, 2017, a German Shepard dog (presumably "Viking") can be seen entering and exiting a vehicle. Specifically, it shows a police officer instruct him/her to enter the vehicle and after a few minutes the dog is seen chewing on fanny pack. The Officers allege that the firearm and drugs were found in this fanny pack.

All three occupants were arrested and taken to GCPD Headquarters. The next morning Homeland Security agents arrived and conducted an interview with Mr. Carmona-Alomar. While neither a video nor audio recording of said video has been provided to defense

counsel, the HSI agents allege that Mr. Carmona-Alomar admitted to being the owner of all seized contraband.

B. **Mr. Carmona-Alomar's Version of Facts**[2]

The 2002 Toyota Rav4 driven by Emilio Quinonez Diaz was pulled over by GCPD officers sometime after midnight on February 3, 2017. Mr. Carmona-Alomar was the rear passenger of the vehicle and Felix Hernandez-Alomar was the front passenger. Two officers approached the vehicle, at gun point, and ordered the driver to exit. Soon thereafter the other two passengers ordered asked to exit the vehicle. Mr. Carmona-Alomar was asked to exit second and Mr. Hernandez-Alomar was the last to exit.

After each individual exited the vehicle he was patted down and searched. The vehicle was then searched and the aforementioned contraband was found. After some time a K-9 unit arrived on scene and entered the vehicle. Mr. Quinonez-Diaz signed the Consent to Search form after the search of the vehicle. All three occupants were arrested and transported to GCPD Headquarters. The next morning they were interviewed by HSI Agents.

III. **Argument**

Mr. Carmona-Alomar challenges the legality of the initial traffic stop as well as the warrantless search, seizure, and arrest that followed. Because these interventions were warrantless, the burden is on the government to establish that all were reasonable under the Fourth Amendment. *Cf. United States v. Melendez*, 301 F.3d 27, 32 (1st Cir. 2002) (where a search falls within an established exception to the warrant requirement, the government bears the burden of proving its legality). Mr. Carmona-Alomar also challenges his statements made to HSI agents as being tainted.

---

[2] This recitation of facts is supported by Mr. Carmona-Alomar's declaration, which will be submitted to this court very shortly. Any representations made on behalf of Mr. Rosa in this motion or in his declaration are made solely for the purposes of suppression proceedings.

### A. The GCPD impermissibly extended a traffic stop.

#### i. The GCPD impermissible extended the traffic stop to wait search the vehicle

"Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (internal citations omitted). *See also United States v. Sharpe*, 470 U.S. 675, 685 (1985) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification.") A traffic stop should last no longer than needed to address the traffic infraction, and "[a]uthority for the seizure thus ends when tasks tied to the infraction are – or reasonably should have been – completed." *Id.* (internal quotations and citation omitted).

Here, according to Mr. Carmona-Alomar's narrative, upon stopping the vehicle Mr. Carmona-Alomar was a passenger in, officers ordered all occupants out at gunpoint and searched them. They then searched the vehicle without consent or a warrant. The occupants were also not informed of the reason for the stop until after their arrest.

The officers did not have probable cause to stop the vehicle, but even if the initial traffic stop had been legal, the ensuing detention and intervention exceeded the scope of the permissible stop. As a result, any evidence seized subsequent to the stop is a fruit of the Fourth Amendment violation and must be suppressed.

#### ii. The GCPD impermissibly continued a traffic stop to afford time for the K-9 unit to arrive

In addition to impermissibly extending the traffic stop by ordering, at gunpoint, all occupants to exit the vehicle, the GCPD officers also impermissibly extended Mr. Carmona-Alomar's stop to bring a K-9 Unit to the scene. Police may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Rodriguez* 135 S. Ct. at 1616. One of the most important concepts related to this issue is that law enforcement

4

officers may not have a person wait for the K-9 unit to arrive after all other stop-related activities have finished.

Here, the Government's version of facts indicates that the vehicle was pulled over for impermissibly switching lanes, a traffic violation. The officers could have given the driver a traffic citation on scene, without asking anyone to exit the vehicle. At this point, the authority for the seizure should have ended because the tasks tied to the infraction, i.e. a traffic citation, should have been completed. *Rodriguez*, 135 S. Ct. at 1614. The officers, however, did not issue the citation right away. Instead they ordered everyone out of the vehicle and began searching.

Thus, the detention and intervention of the K-9 unit exceeded the scope of the stop. As a result, any evidence seized subsequent to the stop is a fruit of the Fourth Amendment violation and must be suppressed.

### B. Even if Mr. Carmona-Alomar was properly stopped, the GCPD officers conducted unreasonable search and seizure

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *California v. Hodari D.*, 499 U.S. 621, 627–28, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (compiling cases). To constitute seizure, the First Circuit requires one's liberty be restrained by either physical force or an assertion of authority. *Id*. at 626, 111 S.Ct. 1547; *United States v. Sealey*, 30 F.3d 7, 9 (1st Cir. 1994); Under the objective totality of the circumstances standard, courts look not to "whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628, 111 S.Ct. 1547.

Notwithstanding that the stop of the vehicle was for a violation based on an officer's alleged observation regarding the driving pattern of the vehicle, and thus presents the fact-

finder with the classic "he said/she said" dilemma. The subsequent detention and search was not reasonably related in scope to the circumstances of issuing a traffic ticket.

## IV. Request for Hearing

Mr. Carmona-Alomar respectfully submits that he has made a sufficient threshold showing that the material facts regarding the validity of the stop, search, seizure, and arrest and post-*Miranda* statements are in dispute. *See United States v. Allen*, 573 F.3d 42, 50 (1st Cir. 2009). As such, Mr. Carmona-Alomar requests an evidentiary hearing on his motion to suppress.

Mr. Carmona-Alomar also submits that this Motion to Suppress has been filed as soon as possible considering that some discover, including the video of the K-9 search, was provided yesterday, April 3, 2017, and there are still outstanding K-9 Reports.

**I HEREBY CERTIFY** that on this date I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, April 4, 2017.

**ERIC A. VOS, ESQ.**
**Federal Public Defender**
**District of Puerto Rico**

S/JUAN J. MICHELEN
Juan J. Michelen,
Assistant Federal Public Defender,
USDC-PR G02601
241 F.D. Roosevelt Avenue
San Juan, PR 00918-2305
Phone No. (787) 281-4922
Juan_Michelen@fd.org