IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | **CRIMINAL NO.** |
| **ANGEL CARMONA ALOMAR** | **17-068 (FAB/MEL)** |
| Defendant. | |

**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS (DOCKET NO. 17)**

**TO THE HONORABLE COURT:**

**COMES NOW** the United States of America, through its attorneys and very respectfully

states and prays as follows:

## I.      INTRODUCTION

On February 8, 2017, a Federal Grand Jury returned a Two Count Indictment against Angel

Carmona Alomar for illegal possession of a machinegun, in violation of Title 18, United States

Code, Section 922(o) and for Prohibited person in possession of a firearm, unlawful user of a

controlled substance, in violation of Title 18, United States Code, Section 922(g)(3).

On April 4, 2017, the defendant filed a Motion to suppress the firearms and ammunition

seized.  In his motion, the defendant argues that the seizure of evidence was unreasonable and in

violation to his Fourth Amendment right, therefore he requested a Suppression Hearing to be held.

However, no offer of proof, let alone evidence, in support of such a claim has been provided.

Defendant also argues that he was illegally arrested and that the search of the vehicle was illegal.

The United States submits that defendant's motion should be denied because: (1) the defendant

has failed to attach any supporting evidence to his motion to suppress, (2) GCPD officers had probable cause to arrest the defendant since he was in unlawful possession of a firearm and ammunition, and (4) the evidence seized in the vehicle was obtained pursuant to probable cause, consent to search provided by the owner of the vehicle, and the automobile exception.

## II.    <u>FACTUAL BACKGROUND</u>[1]

On February 3, 2017, at approximately 12:15AM, as Guaynabo City Police Department (GCPD) Officers were patrolling around Highway 834, at the municipality of Guaynabo, they observed a 2002, Grey, Toyota Rav4, bearing license plate EUP-368 driving in between lanes, in a zig zag motion, in violation of the Puerto Rico Traffic Laws.

GCPD Officers approached the vehicle and noticed that the vehicle had dark, tinted windows. For their safety, GCPD ordered the driver and the two passengers to roll down the windows. When the driver and two passengers rolled down the window, GCPD Officer Gamaliel Rivera smelled a strong Marihuana odor, as if someone had very recently smoked marihuana. Officer Rivera explains to the driver that he has probable cause to believe that there are controlled substances inside the vehicle and requests the driver to exit the vehicle. The vehicle's driver then exits the vehicle while the other two passengers remain inside. Defendant Angel Carmona Alomar was the Rav 4's backseat passenger.

Immediately, Officer Rivera contacts and requests the assistance of GCPD Officer and K-9 handler Roberto Santos. Officer Santos was nearby and arrived at the scene a few minutes later with K-9 Viking. Once Officer Santos arrived, he approached the vehicle's driver and requested

---

[1]  The background facts have been taken from the Affidavit in support to the search warrant, the Reports of Investigation prepared by HSI agents and from interviews with the GCPD Agents involved in the events.

written consent to search the inside of the vehicle with the K-9. The driver stated having understood and voluntary signed the Consent to Search form at the scene of the traffic stop. GCPD Officers then requested the vehicle's front passenger and defendant Carmona Alomar to exit the vehicle in order for Officer Santos to conduct the K-9 search. Officer Santos and K-9 Viking searched the vehicle. As K-9 Viking searched the backseat of the vehicle, Viking took an open fanny pack out of the vehicle and made a positive signal to his handler alerting Officer Santos of the presence of a firearm. As K-9 Viking alerts to the opened fanny pack, Officer Rivera observes a firearm sticking out from the fanny pack. At that time, the Officers placed the driver, front passenger, and defendant Carmona Alomar under arrest. Subsequently, GCPD Officers issued the corresponding traffic violation against the driver in ticket number 878400.

Inside the fanny pack Officers found and seized a black Glock pistol, Model 17, 9mm caliber, bearing the serial number NUP-548, loaded with seventeen (17) rounds of 9mm caliber ammunition, modified to shoot automatically more than one shot with a single pull of the trigger, a Glock high capacity magazine, loaded with thirty (30) rounds of 9mm caliber ammunition, a second Glock high capacity magazine, loaded with twenty seven (27) rounds of 9mm caliber ammunition, two (2) plastic bags with a green leafy substance, which later field tested positive to Marihuana, one (1) cigarette (Phillie Blunt) containing marihuana, and three (3) pills of "Percocet" for which none of the individuals had a prescription for.

Once defendant Carmona Alomar was transported to the police headquarters, Homeland Security Investigations (HSI), Public Safety Group Agents read Carmona Alomar his Miranda warnings in the Spanish language, which he understood and voluntarily waived and agreed to speak to the agents. Carmona Alomar stated that he began smoking to Marihuana when he was eighteen (18) years old and still continuously smokes Marihuana on a daily basis. He also stated

that he smokes five (5) Marijuana cigarettes or Phyllis every day. Carmona Alomar admitted that the black Glock pistol, Model 17, 9mm caliber, bearing the serial number NUP-548 and magazines seized belong to him, that he got the firearm for free from a friend, and that he got it with the modifications that made the firearm fully automatic; a machine gun. Furthermore, he admitted the seized Marihuana and three (3) pills of Percocet belonged to him as well.

As a result of the aforementioned, the United States charged the defendant with illegal possession of a machinegun and prohibited person in possession of a firearm.

### III. <u>LEGAL ANALYSIS</u>

### A. STANDING

**1. The Defendant Lacks Standing to Move to Suppress the Evidence Based on the Alleged Illegality of the Stop.**

The United States respectfully submits that defendant Carmona Alomar has failed to establish that he had a reasonable expectation of privacy with respect to the vehicle he was in and, therefore, lacks standing to request the suppression of the items seized from inside the vehicle. Carmona Alomar asserts to have standing to challenge the stop, and consequently does not claim to have any interest in the car or its contents.

It is well settled that "[b]efore a court may reach the merits of a motion to suppress, **the defendant carries the burden of establishing that he had a reasonable expectation of privacy with respect to the areas searched or. . .the items seized**." *United States v. Rodriguez-Lozada*, 558 F.3d 29, 37 (1st Cir. 2009) (internal quotation marks and citation omitted) (emphasis added). The burden is on a defendant to establish standing to challenge the legality of a search, not on the government to establish that standing is lacking. *See*, e.g., *Combs v. United States*, 408 U.S. 224, 226-27 (1974) (holding that where court of appeals had found no standing and the government had

4

not challenged the defendant's standing in the district court, the issue should be remanded to the district court so that the defendant could have an opportunity to show standing). "[F]ailure to present evidence with respect to a[] [reasonable] expectation [of privacy] prevents a defendant from making a claim for suppression under the Fourth Amendment." *United States v. Samboy*, 433 F.3d 154, 162 (1st Cir. 2005).

To establish a reasonable expectation of privacy, a "defendant must show 'a property [or] a possessory interest in the automobile.'" *United States v. Almeida*, 748 F.3d 41, 47 (1st Cir. 2014) (quoting *United States v. Symonevich*, 688 F.3d 12, 19 (1st Cir. 2012)). This showing made, the government has the burden of establishing that it conducted a search pursuant to an exception to the Fourth Amendment. *See Katz v. United States*, 389 U.S. 347, 357 (1967); *United States v. Melendez*, 301 F.3d 27, 32 (1st Cir. 2002) (government bears the burden).

The Defendant cannot directly challenge the search of the Toyota Rav4 or its seizure because he lacked a reasonable expectation of privacy in that vehicle. *United States v. Kimball*, 25 F.3d 1, 9 (1st Cir. 1994) (defendant-passenger "lack[ed] standing to object to either the seizure of the car or the subsequent inventory search").

Nonetheless, Defendant may have standing to suppress evidence as the fruit of an unlawful seizure, if Defendants shows: (1) "that [the defendant] was seized in violation of his Fourth Amendment rights"; and (2) that "'a factual nexus' exists between [the defendant's] unlawful seizure and detention and the challenged evidence." *United States v. Mosley*, 743 F.3d 1317, 1323 (10th Cir.), *cert. denied*, 135 S. Ct. 184 (2014). "Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not fruit of the poisonous tree." *United States v. Nava–Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000). In essence, the reasoning underlying cases like *Nava-Ramirez* is that because the occupants of the car lack

standing to directly challenge the search of a vehicle in which they had no reasonable expectation of privacy, they must show some link between *their* unlawful seizure and the search of that vehicle to establish that the evidence discovered during the search was a fruit of their own unlawful seizure. *See id.*

Passenger, Carmona Alomar contends he was unlawfully seized, and seeks to suppress evidence found as consequence of an allegedly unlawful seizure. *See Kimball*, 25 F.3d at 9 ("Standing to challenge a search presents issues separate and distinct from standing to challenge the stop").  The Supreme Court has held that because the vehicle's driver and passengers are seized within the meaning of the Fourth Amendment during a traffic stop, a passenger may challenge the constitutionality of the stop. *Brendlin v. California*, 551 U.S. 249, 251 (2007).  In so holding, the Court did not extend "Fourth Amendment rights to passengers who challenge only the search of the vehicle in which they were traveling and not their seizure." *Symonevich*, 688 F.3d at 19 (citing *Brendlin*, 551 U.S. at 263).

In this case, the Defendant was not seized in violation of the Fourth Amendment as discussed below.  The vehicle was stopped a violation of Puerto Rico traffic laws, during the traffic stop, Officers smell a strong marihuana odor, which, in itself, gives the Officers probable cause to believe the vehicle contains controlled substances in violation of state laws, and the vehicle's driver provides consent to search the vehicle. As a result, an automatic firearm is found and seized. This finding gave the Police probable cause to arrest the occupants of the car and the authority to impound the car for investigation purposes under Puerto Rico law and, therefore, none of the occupants could have left in the car.  Even if they were illegally stopped, the Defendants have not shown that if they wanted to leave they could have been able to do so in the car.  The defendant does not contest the right of the Police to impound the car.  The evidence inside the Toyota Rav4

would have been found, regardless, during the inventory search since the vehicle had to be seized due to its connection with a state crime. Therefore, the evidence would have been found despite the illegal seizure of the car.

This principle is more evident in the case of Carmona Alomar. The Rav4 and its driver/owner would have continued to be detained and the officer would still have found the [contraband]. *United States v. Carter*, 14 F.3d 1150, 1154 (6th Cir. 1994) ("Suppose that at the time of the driver's arrest the police had summoned a taxi cab for [the defendant passenger] and told him he was free to leave. The marijuana would still have been discovered, because it was located in a van owned and controlled by [the driver] (who was not going anywhere until his vehicle had been searched) and not in a vehicle controlled by [the defendant passenger].") Consequently, there is not a factual link between the seizure of the Defendants and the search of the car. Put another way, the evidence inside the Toyota Rav4 did not come about "by virtue of" the Defendant's unlawful seizure, *see Kimball*, 25 F.3d at 6, and "would still have been discovered," *see United States v. Carter*, 14 F.3d 1150, 1154 (6th Cir. 1994).

### 2. The Defendant Lacks Standing to Request the Suppression of the Evidence as a result of the Search of the Car

Following the decision of the Supreme Court in *Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), the First Circuit has ruled that passengers in an automobile who assert no property or possessory interest in a vehicle cannot be said to have the requisite expectation of privacy in the vehicle to permit them to maintain that the search did not meet Fourth Amendment standards. *United States v. Symonevich*, 688 F.3d at 19, 21 (1st Cir. 2012); *United States v. Campbell*, 741 F.3d 251 (1st Cir. 2013). Consequently, it necessarily follows that the

Defendant has no standing to challenge the search of the car, since he has not claimed a privacy interest in the vehicle.

### a. The Passenger

As stated above, in the context of a vehicle search, a passenger who has "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized," has made no showing that he or she has a legitimate expectation of privacy in, for example, the area under the seat of the car in which he or she was "merely [a] passenger[]." *Id.* at 148.  Under such circumstances, a vehicle search does not infringe upon the passenger's Fourth Amendment rights. Thus, the passenger lacks standing to challenge the search.  *United States v. Symonevich*, 688 F.3d 12 (1st Cir. 2012).

In this case, Carmona Alomar did not present evidence to support the proposition that he had a property or possessory interest in the Toyota Rav4 and therefore, he lacks a reasonable expectation of privacy in the backseat area or under the vehicle's seats. *See Symonevich*, 688 F.3d at 19; *see also Rakas*, 439 U.S. at 148–49 ("the trunk of an automobile . . . [is not an] area[ ] in which a passenger *qua* passenger . . . would . . . normally have a legitimate expectation of privacy"); *United States v. Kimball*, 25 F.3d 1, 9 (1st Cir. 1994) (defendant-passenger "lack[ed] standing to object to either the seizure of the car or the subsequent inventory search").

Based on the foregoing, the United States submits that Defendant's motion requesting the suppression of the evidence seized and a suppression hearing should be denied since the defendant has not established standing.

### B.   FAILURE TO RAISE A MATERIAL ISSUE OF FACT

The United States respectfully submits that the defendants' motion is based on vague claims that fail to raise a genuine issue as to a material fact to warrant an evidentiary hearing.  The

defendant has not even attached a sworn or an unsworn statement to their motion and failed to provide any corroborating evidence to support the facts stated in his motion.

As an initial matter, the decision to hold an evidentiary hearing on a motion to suppress is within the sound discretion of this Court. *United States v. Calderón*, 77 F.3d 6, 9 (1st Cir. 1996). Hence, evidentiary hearings are warranted when a defendant makes a "sufficient showing that a warrantless search has occurred." Id. This sufficient showing is made when the defendant "allege [s] facts sufficiently definite, specific, detailed and nonconjectural, to enable the court to conclude that a substantial claim is present.'" Id. Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." Id. (internal citation omitted).

In *Calderón*, the First Circuit affirmed the District Court's decision to deny an evidentiary hearing when defendant failed to submit an affidavit to support his contention of police misconduct and "gave no flesh" to his motion.

In the instant case, details contained in the defendant's motion to suppress are not backed up by any supporting evidence. The defendant's general and unspecific assertions fail to show that a substantial claim is present. The defendant's conclusory allegations that there may have been some sort of Agent misconduct at the time of the investigation have no flesh and do not merit a suppression hearing, much less the suppression of the evidence seized. These conclusory allegations, which have been submitted to the court by the defendants in a misguided effort to create a non-existing factual dispute, should not be entertained.

The failure to attach any evidence, in and of itself is grounds for the denial of defendants' motion to suppress. It is well settled that there is no constitutional right to a hearing on a pretrial motion, such as a motion to suppress. A criminal defendant does not have a presumptive right to

an evidentiary hearing on a motion to suppress. "A hearing is required only if a movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot be reliably resolved on a paper record. *United States v. Jiménez*, 419 F.3d 34, 42-43 (1ˢᵗ Cir. 2005).

Therefore, it is the government's position that this court should deny defendant's request for an evidentiary hearing, for failing to properly establish that a substantial claim is present in the case at bar.

### C. THERE WAS PROPABLE CAUSE TO ARREST THE DEFENDANT

**1.     The vehicle was legally stopped for a violation of the Puerto Rico Traffic Law**

In the present case, Defendant, without any offer of proof, contest the reason given by the Officers for the stop and allege that the GCPD impermissibly extended the traffic stop. D.E. 17, p.4. The PRPD agents stopped the Rav4 because of suspected violations of Puerto Rico Traffic Laws for driving in between lanes in a zig zag motion. A traffic stop "satisfies the Fourth Amendment's reasonableness requirement if 'police officers have a reasonable suspicion of wrongdoing—a suspicion that finds expression in specific, articulable reasons for believing that a person may be connected to the commission of a particular crime.'" *United States v. Campbell*, 741 F.3d at 261 (quoting *United States v. Lee*, 317 F.3d 26, 31 (1st Cir. 2003)). The Supreme Court held in *Whren v. United States*, 517 U.S. 806 (1996) that because "the officers had probable cause to believe that [the defendants] had violated the traffic code," the "stop [was] reasonable under the Fourth Amendment." *Id.* at 819.

Reasonable suspicion is an "intermediate standard" that "defies precise definition," that "does not require either probable cause or evidence of a direct connection linking the suspect to the suspected crime," and that "must be determined case by case" after considering all the attendant circumstances. *Chhien*, 266 F.3d 1 at 6 (1st Circ.2001).

In this case, the GCPD officers stopped the Rav4 because they suspected the vehicle was driven illegally in between lanes, a violation of Puerto Rico Law 22 and of the Guaynabo Municipal Traffic Ordinance. As a result, the vehicle's driver was issued a traffic ticket.

Driving between lanes, at 12:15 a.m., surely provided the GCPD agents with reasonable suspicion that a traffic violation had occurred, and thus, their decision to conduct the traffic stop was justified.

Therefore, given the reasonable suspicion that the Toyota Rav4 was driving in violation of Puerto Rico Traffic Laws and the Guaynabo Municipal Traffic Ordinance, the stop of the vehicle was legal and the subsequent seizure of the contraband should not be suppressed. Accordingly, the initial intervention of the vehicle's driver, front passenger and defendant Carmona Alomar was not in violation of the Fourth Amendment. Consequently, the Defendant's motion to suppress should be DENIED.

### 2.     Probable Cause

"Probable cause exists when 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Draper v. United States, 358 U.S. 307, 313 (1958) (quoting Carroll v. United States, 267 U.S. 132, 162 (1955)). Probable cause is a "fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, supra at 232. Probable cause is more than a mere suspicion, but considerably less than what is necessary to convict someone. United States v. Ventresca, 380 U.S. 102 (1965). In United States v. Ciampa, 793 F.2d 19, 22 (1st Cir. 1986) the First Circuit held that

the "fair probability" standard does not require a prima facie showing of criminal activity, citing Illinois v. Gates, supra at 235.

The First Circuit has held that a probable cause determination is fundamentally a fact- specific inquiry and "[N]o one factor possesses talismanic powers."    United States v. Khounsavanh, 113 F.3d 279 (1st Cir.1997) and that "a determination of probable cause 'cannot be based on hard certainties and rigid rules'. See United States v. Caggiano, 899 F.2d 99, 102 (1st Cir.1990) citing Richards v. Wisconsin, 520 U.S. 385 (1997).

The GCPD initially conducts a traffic stop on the Rav4 because the vehicle was driven in between lanes in violation of Puerto Rico traffic laws and ordinances. During the traffic stop, GCPD Officers notice a very strong odor of marihuana giving them probable cause to believe the occupants of the vehicle were in possession of marihuana, a felony offense in violation of article 404(a) of the Puerto Rico Controlled Substances Law.  Officer Rivera asks the driver to exit the vehicle and requests the assistant of K-9 handler Officer Santos. The vehicle's driver gives Officer Santos written consent to search the vehicle. During the search, K-9 Viking positively alerts to a fanny pack located on the floor area of the vehicle's back seat and Officer Rivera is able to observe a firearm sticking out of the fanny pack. In that moment, the officers had probable cause to believe that a Controlled Substance violation and a Weapon's Law violation had taken place in their presence. As a result, the driver, front passenger and defendant Carmona Alomar are placed the defendant under arrest.

Notably, being that Puerto Rico is a concealed-carry jurisdiction, for a finding of probable cause to believe there has been a violation of the Weapons Act, it is not necessary that the individual carrying the firearm is doing so without a weapon's permit. *United States v. Aviles-Vega,* 783 F.3d 69, 73 (1st Cir. 2015).  Because "[t]he visual display of a firearm is a crime under

Puerto Rico Law, . . . an individual must carry a firearm in a concealed manner even if he or she possesses a license to carry the firearm." Id. (finding that police had reasonable suspicion to stop a vehicle when an anonymous caller saw a pistol being openly passed between the passengers inside the vehicle). As a result, as soon as Officer Rivera observed a visible firearm without it being properly concealed, the officer had probable cause to believe that a violation of the Puerto Rico Weapons Act had occurred in his presence.

The facts of this case are clear. The GCPD agents conducted a traffic stop in a vehicle driven illegally between lanes, the officers perceived a very strong odor of marihuana that provided them probable cause to believe the occupants where in possession of a controlled substance, even though the agents already had probable cause to search the vehicle, the driver gave written consent to search the vehicle, and a firearm was observed sticking out of a fanny pack and seized. Each event, beginning with a traffic stop, led to the other and each event provided probable cause for the officers to intervene and eventually place the defendant under arrest.

### 3.       The arrest

The United States submits that the arrest was legal inasmuch as the agents' observations provided agents with probable cause to believe the defendant was in illegal possession of a firearm.

A warrantless arrest is constitutionally valid if, at the moment the arrest is made, officers have probable cause to make it, that is, if at that moment facts and circumstances within their knowledge and of which they have trustworthy information are sufficient to warrant a prudent man in believing that the arrestee has committed or was committing an offense. *United States v. Ayres*, 725 F.2d 806 (1st Cir. 1984).  To establish probable cause, the government "need not present the quantum of proof necessary to convict." *United States v. Uricoechea-Casallas*, 946 F.2d 162, 165 (1st Cir.1991); *United States v. Meade*, 110 F.3d 190, 193 (1st Cir. 1997).

The inquiry into probable cause focuses on what the officer knew at the time of the arrest, *United States v. Brown*, 169 F.3d 89, 91 (1st Cir. 1999), and should evaluate the totality of the circumstances. *United States v. Reyes*, 225 F.3d 71, 75 (1st Cir. 2000). "[P]robable cause is a common sense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Meade*, 110 F.3d at 198 n. 11; *United States v. Vongkaysone*, 434 F.3d 68, 73 (1st Cir. 2006).

In this case, as previously mentioned, this intervention began as a traffic stop, which led to the agents having probable cause to believe the occupants of the vehicle were in violation of the state Controlled Substances Law, the driver provides written consent for officers to search the vehicle and concluded with Officer Rivera observing and seizing a firearm. Based on these facts, the decision to place the defendant under arrest was objectively reasonable under the circumstances. The officer had probable cause to believe the defendant was engaged in criminal activity. As such, suppression should not be warrant under this argument.

## D. AUTOMOBILE EXCEPTION

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Constitution Amendment IV. A warrantless search violates the Fourth Amendment unless it comes within one of the "few specifically established and well-delineated exceptions" to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

Although this ordinarily means that a seizure of property by a police officer requires a warrant, exceptions exist. *United States v. Sanchez*, 612 F.3d 1, 4 (1st Cir. 2010).

One of the exceptions to the warrant requirement of the Fourth Amendment is the "**automobile exception**". Under this doctrine, the only essential predicate for a valid warrantless search of a motor vehicle by law enforcement officers is "probable cause to believe that the

[vehicle] contains contraband or other evidence of criminal activity. *U.S. v. McCoy*, 977 F.2d 706, 710 (1st Cir.1992).

There are two reasons for this exception: (1) the "inherent mobility of automobiles and the fact that (2) the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home. *South Dacota v. Opperman*, 428 U.S.C 364, 367-72 (1976).

In *U.S. v. McCoy*, 977 F.2d 706, 710 -711 (1st Cir.1992), the Court upheld the search of a vehicle by New Hampshire police officers that belonged to the prime suspect of a burglary, after determining that they had enough information to believe that the suspect was in possession of the stolen property in his vehicle.

The Supreme Court also upheld the seizure of a firearm located under the passenger's seat of a vehicle that had been the subject of a traffic stop, after the police officer saw part of a firearm when moving papers that where obscuring the VIN number of the vehicle. *New York v. Class*, 475 U.S. 106, 114 (1986).

In *Michigan v. Thomas*, 458 U.S. 259, 261 (1982), police officers conducted a search of a vehicle after its two occupants had been placed under arrest and the vehicle was ready to be towed. The Supreme Court expressed that: "It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant."

In the case at bar, Officer Rivera conducted a traffic stop, during the traffic stop he smelled a strong odor of marihuana which, in of itself, gives him probable cause to believe that the occupants are in possession of controlled substances inside the vehicle. Therefore, is conclusive

that the seizure of the firearm and ammunitions are within the scope of the automobile exception of the Fourth Amendment Clause.

### E.     SAFETY REASONS AUTHORIZE POLICE OFFICERS TO ORDER OCCUPANTS TO GET OUT OF THE CAR

As part of a legal traffic stop, police can order the occupants of the vehicle to step outside of the vehicle for the duration of the stop to reduce danger to the officer. *Pennsylvania v. Mimms*, 434 U.S. 106, 985 S. Ct. 330 (1977) and *Maryland v. Wilson*, 117 S.Ct. 882 (1997). As stated above, the car where the Defendant was riding was legally detained for suspected violations of the dispositions of Puerto Rico's Traffic Law and the Guaynabo Municipal Traffic Ordinance. While doing the routine traffic stop, the officer perceived a strong marihuana odor, as if marihuana had been recently smoked, which gave reason to question the driver about it the presence of controlled substances inside the vehicle, a state felony offense. At that time, Officer Rivera asked the driver to exit the vehicle. There were still two other occupants inside the vehicle, a front passenger and a backseat passenger.

Any objectively reasonable police officer would have deemed, under the circumstances confronted by the GCPD officers, that upon having probable cause to believe that there were controlled substances inside the vehicle, an intervention for further investigation was warranted. Keeping in mind that this traffic stop took place at approximately 12:15a.m., in a vehicle with tinted windows were police could not clearly see inside, and that there were multiple occupants inside the vehicle, that intervention would have also reasonably justified and required taking all of the occupants out of the car because of the dangerousness of the circumstances, the crime being investigated, and the time and place of the encounter.

## IV.    CONCLUSION

Based on the foregoing, the United States submits that defendant's motion requesting the suppression of the evidence seized should be denied because: (1) the defendant's motion is based on vague claims that fail to raise a genuine issue as to a material fact to warrant an evidentiary hearing to the defendant , because (2) the search and seizure was valid, based on probable cause, the automobile exception, and with the owner's consent; and (3) because the defendant was placed under arrest based on probable cause once GCPD officers observed him in the commission of a crime.

**WHEREFORE**, the United States respectfully prays the Court take notice of the above-stated, and **deny** defendant's motion to suppress the firearm and ammunitions, and deny defendant's request for an evidentiary hearing since there is no factual dispute as to challenge the arrest and seizure.


**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 25th day of April, 2017.

**ROSA EMILIA RODRIGUEZ-VELEZ**
United States Attorney

*S/Daynelle Alvarez Lora*
**Daynelle Alvarez Lora - 227612**
Special Assistant United States Attorney
U.S. Attorney's Office
Torre Chardón, Suite 1201
# 350 Carlos Chardón Ave.
Hato Rey, PR 00918
Tel.:  (787) 766-5656
Fax:  (787) 766-5326
Email: daynelle.m.alvarez@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/ Daynelle Alvarez Lora
**Daynelle Alvarez Lora**
Special Assistant United States Attorney